**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MIRIAM WINKLER,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | **NO.  12-6250** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA – DEPARTMENT** | : | |
| **OF AGRICULTURE, et al.,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                          **January 16, 2014**

Miriam Winkler is suing the Commonwealth of Pennsylvania Department of

Agriculture and three employees of its Bureau of Dog Law Enforcement.[1]  She brings

various state law tort claims and violations of the Constitutions of both the United States

and Pennsylvania.  The defendants have filed a motion to dismiss to which the plaintiff

responded.  For the following reasons, I will grant the motion in its entirety.

**I.  BACKGROUND**

Ms. Winkler is an experienced and nationally-known dog breeder, who sold her

dogs around the world for $2,500 each.  From 2006 until 2010, she was the

owner/operator of "Judge's Choice," where she bred Bichon Frises and Neapolitan

Mastiffs.  As a licensed kennel, Judge's Choice was subject to state regulations.  For

example, each licensed kennel must be inspected at least twice per calendar year, and the

---

[1]  The complaint does not specify whether these individual defendants are being sued in their
official or personal capacities.  The complaint does, however, specify that they were each acting
within the course and scope of their employment and/or agency.

owners must allow the inspecting state employees onto the property.  The dog law includes various administrative, civil, and criminal penalties for violations.  Before December 8, 2008, the law required kennel inspections only once per calendar year.  Judge's Choice was regularly inspected by dog wardens, including Defendant Orlando Aguirre.  Past inspections revealed "minimal, if any, issues in need of attention."  The complaint mentions, however, that on numerous occasions before June 2010, Defendant Aguirre sexually harassed Ms. Winkler, including unwanted touching and sexual advances.  She chose to not report his conduct for fear of retaliation.

On April 27, 2010, Defendant Aguirre and two other dog wardens, Defendants Diane Buhl and Kathy Andrews, conducted an inspection of Judge's Choice.  Ms. Winkler was present and granted them access to the kennel.  During the inspection, these individual defendants "suddenly" advised Ms. Winkler to surrender the custody of her dogs to them or they would file criminal charges.  Ms. Winkler insists that the dogs were "healthy," but agreed to surrender custody of twenty Bichon Frises and one Border Collie, dogs worth $50,000.  She claims she did so because she was "unaware of her legal rights," "in fear of the threats from Defendant Aguirre, Defendant Buhl and Defendant Andrews."  Ms. Winkler signed "a document with blanks not filled in."  Allegedly, Defendant Aguirre told her that because she had not cooperated with him by agreeing to be alone with him, she was not "playing ball" and "would be sorry."

The individual defendants turned the dogs over to the SPCA and/or other rescue organizations.  There is no indication in the complaint that Ms. Winkler attempted to get any of the dogs back into her own custody.

2

On June 4, 2010, Defendants Aguirre and Buhl returned to Judge's Choice, but Ms. Winkler was not present.  The complaint alleges that Defendants Aguirre and Buhl entered the kennel without a warrant and caused a Neapolitan Mastiff to escape from the air-conditioned kennel.  The dog was unable to return to the kennel and died from over-exposure to the extreme heat.

Thereafter, the three individual defendants filed the following charges under the Dog Law against Ms. Winkler:  Unlawful Operation of a Kennel without a License, 3 P.S. § 459-207(a.1)(1); Making False Statements/Concealing Facts, 3 P.S. § 459-801; three counts of Failure to Keep Kennel in Sanitary and Humane Condition, 3 P.S. § 459-207(b); Kennel Licensee/Owner Failure to Respond to Notice, 3 P.S. § 402(d); and Failure to Keep Proper Kennel Records, 3 P.S. § 459-207(c).  The Pennsylvania State Police filed the following criminal charges against Ms. Winkler under the Crimes Code: 21 counts of Cruelty to Animals, 18 P.S. § 511; and one count of Criminal Conspiracy-Cruelty to Animals, 18 P.S. § 903.

Magisterial District Judge Rod R. Beck conducted a trial on the charges, which were all summary offenses.  On September 29, 2010, Judge Beck found Ms. Winkler guilty of Unlawful Operation of Kennel without a License, Making False Statements/Concealing Facts, and three of the Cruelty to Animals charges.  Ms. Winkler was sentenced to pay fines and costs of $200.00 for each conviction.

Ms. Winkler alleges that during the trial, Defendants Aguirre, Buhl, and Andrews "committed perjury by submitting as evidence of Plaintiff's violations, photographs of other kennels represented as that of Plaintiff."  Ms. Winkler appealed the convictions and

3

sentences to the Court of Common Pleas of Lehigh County, thereby invalidating Judge Beck's verdict and sentence.  In the Court of Common Pleas, Ms. Winkler reached a plea agreement where she agreed to reinstatement of Judge Beck's convictions for the charges of Unlawful Operation of Kennel without a License and Making False Statements/Concealing Facts.  In exchange, the prosecution agreed to Ms. Winkler's entry into the Accelerated Rehabilitative Disposition Program ("ARD") program and withdrew further prosecution of the three Cruelty to Animal charges of which Judge Beck had found Plaintiff guilty.

Ms. Winkler filed an eleven count complaint in this court alleging that her United States Constitutional rights had been violated by the Commonwealth and the individual defendants, and that they had also violated the due process clause of the Pennsylvania Constitution.  The complaint also alleges claims of trespass, conversion, and civil conspiracy against the individual defendants.  Ms. Winkler seeks compensatory damages, punitive damages, attorney's fees, costs of litigation, and interest.

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all

plausible inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim.  Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must, however, "allege facts suggestive of [the proscribed] conduct," Twombly, 550 U.S. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that their duty to accept allegations as true does not apply to legal conclusions.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are not entitled to the assumption of truth and then consider whether the complaint's factual allegations plausibly suggest an entitlement to relief.  Id.

## III.  DISCUSSION

### A.  Counts One through Six

In Counts One through Six, the complaint alleges claims of constitutional violations pursuant to 42 U.S.C. § 1983, against the Commonwealth of Pennsylvania's Department of Agriculture and three individual employees of its Bureau of Dog Law Enforcement.  Title 42 U.S.C. § 1983 authorizes redress for violations of constitutional rights and provides, in pertinent part, that:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).  By its terms, Section 1983 does not create a substantive right; it merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes.  Baker v McCollan, 443 U.S. 137 (1979).  In order to establish a claim under Section 1983, a plaintiff must demonstrate (1) a violation of a right secured by the Constitution and the laws of the United States and that (2) the alleged deprivation was committed by a person acting under color of state law.  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999).

   1. Commonwealth Defendant and Individual Defendants Sued
      In Their Official Capacities

6

The complaint does not specify whether the plaintiff is suing the individual defendants under their personal capacities or their official capacities.  It is well-established, however, that Section 1983 does not provide for damages claims against state agencies or state officials in their official capacities.  Will v. Michigan Department of State Police, 491 U.S. 58, 64, 70-71 (1989) (holding that an entity with Eleventh Amendment immunity is not a "person" within the meaning of Section 1983). Accordingly, these claims cannot be brought against Pennsylvania's Department of Agriculture or its employees in their official capacities.  Id. at 66-67;[2]  see also Hafer v. Melo, 502 U.S. 21, 25-27 (1991) (holding that neither a state nor its agencies are to be considered "persons" for § 1983 purposes and are therefore not subject to suit under the statute).  I will grant the defendants' motion to dismiss the Section 1983 claims for damages against the Commonwealth defendant and its three individual employees as defendants in their official capacities.

2.  Individual Defendants Sued In Their Personal Capacities

Should the plaintiff have intended to sue these individual defendants in their personal capacities, the claims would still not survive.  In Counts One through Six, Ms. Winkler alleges that the conduct of the defendants resulted in an unreasonable seizure of

---

[2] While the defendants' removal of this action waives their Eleventh Amendment immunity from suit in a federal forum, Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613 (2002), it does not affect the application of Will.  Lombardo v. Pennsylvania Dept. of Public Welfare, 540 F.3d 190, 195 (3d Cir. 2008) (holding that state sovereign immunity comprises more than just immunity from suit in federal court; it also includes a State's immunity from liability). However, "opinions of [the Third Circuit] and other courts of appeals have sometimes used the terms 'sovereign immunity' and 'Eleventh Amendment immunity' interchangeably."  Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 197 n.2 (3d Cir. 2008).

her personal property in violation of the Fourth Amendment, and deprived her of a property interest in her dogs without proper due process in violation of the Fourteenth Amendment.  These claims are barred by the <u>Heck</u> doctrine.

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court of the United States rejected Section 1983 as a vehicle to challenge the lawfulness of a criminal judgment.  The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*, 28 U.S.C. § 2254."  512 U.S. at 486-487.  "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."  <u>Id.</u>  The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.  <u>Id.</u> at 487.

Here, success in Ms. Winkler's claims of constitutional violations against the defendants would necessarily imply the invalidity of Ms. Winkler's convictions in the state court.  Ms. Winkler cannot demonstrate that her state court convictions have been invalidated.  Accordingly, I will grant the defendants' motion to dismiss Counts One through Six of the complaint as failing to state claims upon which relief may be granted.

### B.  Counts Seven and Eight

In Counts Seven and Eight, the plaintiff claims violations of the Due Process Clause of the Pennsylvania Constitution.  As the Third Circuit observed "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.  <u>Pocono Mountain Charter School v. Pocono Mountain School Dist.</u>, 442 Fed.Appx. 681, 687-688 (3d Cir. 2011) (citing <u>Jones v. City of Phila.</u>, 890 A.2d 1188, 1208 (Pa.Commw.2006)). Accordingly, I will dismiss these counts of the complaint.

### C.  Counts Nine, Ten, and Eleven

In Counts Nine, Ten, and Eleven, Ms. Winkler brings three state law tort claims against each of the individual defendants.  The defendants argue that sovereign immunity bars these claims, and I must agree.

Sovereign immunity generally bars damages claims for violations of state law, including intentional misconduct, against the Commonwealth, its agencies, and its officials and employees acting within the scope of their duties,[3] except where the legislature provides otherwise.  <u>See</u> 1 Pa. C.S. § 2310; 42 Pa. C.S. §§ 8521-8522.  I note that sovereign immunity applies to all claims except for nine narrowly enumerated

---

[3]  Title 1 Pa. C.S. § 2310 provides: "Pursuant to Section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  The Pennsylvania Department of Agriculture is a Commonwealth agency.  Here, the complaint explicitly states that Defendants Aguirre, Buhl, and Andrews "[a]t all times relevant hereto" were Department of Agriculture employees and "acted within the course of [their] employment and/or agency."

exceptions.  "The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages *caused by*: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines."  42 Pa. C.S. § 8522(b) (emphasis added).

The sixth exception for tort claims where the damages are caused by "[t]he care, custody or control of animals in the possession or control of a Commonwealth party," does not apply to the facts here.  As the Commonwealth Court of Pennsylvania explained in a similar case:

> We find another portion of § 8522(b) controls. The portion of the section which, in essence, introduces the exceptions set forth in § 8522(b)(1)-(9) provides in pertinent part, ". . . the defense of sovereign immunity shall not be raised to claims for damages *caused by*. . . ." (Emphasis added.) On the facts of this case as set forth in the Plaintiff's complaint the damages complained of refer to those caused to the animals, not by the animals. We must conclude that the exception to sovereign immunity set forth in § 8522(b)(6) is not applicable in a case where, as here, damages are sought for damages caused to, not by, animals.

Mayo v. Lichtenwalner, 557 A.2d 798, 799 (Pa. Commw. 1989).  Because the defendants' conduct alleged in the complaint involves damages caused to Ms. Winkler's dogs, and not by her dogs, the exception to sovereign immunity does not apply.

Accordingly, I will grant the defendants' motion to dismiss Counts Nine, Ten, and Eleven.

An appropriate Order follows.